

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| JGM:MLY | *271 Cadman Plaza East* |
| F.#2010R01153 | *Brooklyn, New York  11201* |

October 3, 2011

By Hand and ECF

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:  United States v. Courtney Dupree, et al.
>      Criminal Docket No. 10-627 (S-2)(KAM)

Dear Judge Matsumoto:

The government respectfully writes in support of the below motions in limine.

I.   The Court Should Preclude References To The Possible Consequences Of Conviction

The government moves to preclude the defense from making any reference — either explicitly or implicitly — to the possible consequences of punishment should the defendants be convicted. As a general matter, juries are instructed not to consider a defendant's punishment in determining that a defendant's guilt because guilt should determine punishment, not vice versa. See Rogers v. United States, 422 U.S. 35, 40 (1975) (stating that "the jury [has] no sentencing function and should reach its verdict without regard to what sentence might be imposed"); see also United States v. Jones, 933 F.2d 807, 811 (10th Cir. 1991) ("[T]here is abundant authority that it is improper to inform the jury of the defendant's possible punishment"); United States v. Richardson, 130 F.3d 765, 778 (7th Cir. 1997)("arguing punishment to a jury is taboo"); United States v. Cook, 776 F. Supp. 755, 757 (S.D.N.Y. 1991) (observing that "[t]he function of the jury in a criminal trial is to determine guilt or innocence based upon an impartial consideration of the evidence, unswayed by emotion, fear or prejudice" and "[w]here the jury is permitted to speculate concerning a defendant's possible punishment, a jury cannot properly perform that function"); United States v. Patterson, No. 95 Cr 242, 1996 WL 54237 at *1 (N.D. Ill. Feb. 8,

1996)(prohibiting discussion of potential penalties in order to avoid possible jury nullification).

Thus, comments regarding the possible consequences of punishment regarding the defendants are irrelevant and should be precluded pursuant to Rule 402 of the Federal Rules of Evidence.

II.   The Court Should Preclude Cross-Examination Or Direct Testimony Concerning A Government Witness's Treatment For Depression

During its case in chief, the government intends to offer the testimony of a witness who received treatment for depression while employed by the defendants.[1] Because the witness's treatment was paid for using a health insurance plan maintained by the businesses operated by the defendants, the defendants may be aware of the witness's condition.  The government moves to preclude any cross-examination or testimony concerning the witness's treatment for or diagnosis of depression as it is irrelevant, far more prejudicial than probative, would serve only to harass and embarrass the witness, and would constitute an invasion of the witness's privacy.

Evidence of a medical or psychological condition is only admissible if it may have affected a witness's "...ability to perceive or to recall events or to testify accurately." United States v. Vitale, 449 F.3d 190, 195 (2d Cir. 2006) citing United States v. Sasso, 59 F.3d 341, 347 (2d Cir. 1995). Therefore, evidence of psychological disorders are only relevant when "...the witness exhibited a pronounced disposition to lie or hallucinate, or suffered from a severe illness, such as schizophrenia, that dramatically impaired her ability to perceive and tell the truth."  United States v. Butt, 955 F.2d 77, 82-83 (1st Cir. 1992).

There is no indication that the witness's ability to perceive and recall events or to testify accurately was affected by depression.  In similar cases, courts have been unwilling to subject a witness to the embarrassment and distraction of a cross-examination about a diagnosis of depression.  Sasso, 59 F.3d at 348; Butt, 955 F.2d at 82-83.  As such, the government

---

[1]   The government does not intend to provide the witness's identity in a public filing but, if instructed to do so, the government will provide the identity of the witness in a sealed ex parte filing to the Court.

respectfully requests that cross examination or discussion of this topic before the jury be precluded.

## III. The Court Should Preclude Cross-Examination Regarding Veronica Finn's Husband

The government also expects to call Veronica Finn ("Finn"), another of the defendants' former employees, to testify.  Finn is married to a retired FBI agent, Martin Finn. Finn's husband did not play any role in the investigation of this case and he was unaware of this case prior to the defendants' arrests.  However, the defendants have repeatedly attempted to insert Finn's husband into the case, including in their motion claiming prosecutorial misconduct and their motion for a bill of particulars.  (Doc. Nos. 91-3 and 70).  Most notably, the defendants have charged that "throughout the search" of GDC's offices Finn's husband was "permitted free and unfettered access to all areas of the office." (Doc. 91-3 at 9). The Court has already rejected the defendants' arguments.  See Dec. 30, 2010 Order, Slip. Op. at 31-33, and United States v. Dupree et al., 10-CR-627 (KAM), --- F.Supp.2d ----, 2011 WL 1004824 at *38-45 (E.D.N.Y. Mar. 18, 2011).

Discussion of Finn's husband and his arrival at GDC's offices is irrelevant to the charges in this case and any legally sufficient defense to those charges.  See Fed. R. Evid. 402.  The Court has already held that the search of GDC's offices was proper, and has similarly rejected the defendants' motion to suppress the fruits of that search.  Further, there is nothing to suggest that Finn's testimony would be tainted by her marriage to a former law enforcement agent.  See United States v. Drapeau, 414 F.3d 869, 875 (8th Cir. 2005)(upholding trial Court's decision precluding cross-examination of witness based upon the fact that the witness's sister was an employee of the U.S. Attorney's Office and brother-in-law was an FBI agent). Nor is there evidence to suggest that Finn's testimony would be tainted by her husband's arrival, in response to her phone call, at GDC's offices during the search.  Testimony or other evidence regarding Finn's husband would simply confuse the issues in the trial.  See Fed. R. Evid. 403; see also United States v. Griffin, 867 F.Supp. 1347 (N.D. Ill. 1994), aff'd 84 F.3d 820 (7th Cir. 1996)(noting an "increasing tendency in criminal cases to try some person other than the defendant and some issues other than his guilt"); United States v. Thomas, 116 F.3d 606, 614 (2d Cir. 1997)("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is

desirable or that courts may permit it to occur when it is within their authority to prevent").

IV.   The Court Should Preclude Direct Testimony Or Cross-Examination Regarding Any Of The Defendants' Allegations Of Prosecutorial Misconduct

        The defendants' unsuccessful motion claiming prosecutorial misconduct also made many other allegations - all of which were rejected by the Court – including that (1) the government allegedly "obtained privileged and confidential documents and communications from GDC's offices"; (2) the government returned the seizure warrants on the Amalgamated Accounts unexecuted, but allegedly told the bank not to pay the defendants' salaries; (3) the government seized and later refused to release the funds in the JP Morgan Chase, N.A. bank accounts without the consent of the victim, Amalgamated Bank; and (4) the government allegedly used the grand jury improperly. As the Court found, there was no merit to any of these allegations or any of the defendants' other claims of misconduct.  Furthermore, they are all wholly irrelevant to the case and would do nothing but confuse and mislead the jury.  See Fed. R. Evid. 402 and 403.  In fact, courts have rejected attempts to introduce such evidence even in cases where there were actual judicial findings of misconduct. See, e.g., United States v. Carona, 630 F.3d 917, 924 (9th Cir. 2011)(rejecting claim that district court should have permitted defendant to introduce evidence of prosecutorial misconduct in case where district court had actually found that the prosecutor had violated a state ethics rule).  Clearly, a jury should not be exposed to such baseless accusations in a case where there are no findings of misconduct.

V.   The Recordings Are Admissible Non-Hearsay Because They Are Statements Of Co-Conspirators, And The Court May Delay Its Determination On The Issue Until The Close Of The Government's Case-In-Chief

        All three defendants have previously indicated that they will object to the admission of some recorded statements. Specifically, defendant Thomas Foley has previously indicated that he will oppose the admission of all recordings, except the recording on which he spoke (Recording 16-7), as non-admissible hearsay.  Defendants Courtney Dupree and Rodney Watts have previously stated that they object to the admissibility of any recorded conversations between Frank Patello and Emilio Serrano. All of these objections are groundless; the Federal Rules of

Evidence and related case law explicitly provide for the admission of these statements.  In addition, as explained below, there is no need for the Court to make a preliminary ruling on all the recordings produced to the defendants, which number more than 50.  The Court can and should wait until the conclusion of the government's case-in-chief so that the Court may confine its determination to those recordings that are actually offered and objected to at trial.

Foley's position on the recordings is directly contradicted by the rule that statements of a party's co-conspirators in furtherance of the conspiracy are not hearsay when offered against that party.  Fed. R. Evid. 801 (d)(2). Whether Foley personally participated in a recorded conversation is irrelevant. Id.; see, e.g., United States v. Thai, 29 F.3d 785 (2d Cir. 1994) (conspirator's tape recorded statement to government informant was statement by coconspirator in furtherance of conspiracy and not inadmissible hearsay); see also United States v. Diaz, 176 F.3d 52, 103 (2d Cir. 1999) (statements by a defendant's co-conspirators, including tape recorded statements and statements made before the defendant joined the conspiracy, were properly admitted against the defendant pursuant to Rule 801(d)(2)(E)).

The other defendants' objections to the admissibility of any recorded conversations between Frank Patello and Emilio Serrano are also unfounded.  The conversations between Patello and Serrrano consist of "statements that provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster a trust and cohesiveness, or to inform each other as to the progress or status of the conspiracy."  United States v. Maldonado-Rivera, 922 F.2d 934, 958-59 (2d Cir. 1990).  The recordings also contain highly relevant information regarding what was happening in the conspiracy at the time of the recording, such as the bank examination, the audit by the outside accountant, and the new Borrowing Base Certificates. And, of course, the conversations tend to establish the existence of the conspiracy.

An out-of-court statement is non-hearsay under Rule 801(d)(2)(E) if the court determines by a preponderance of the evidence that a conspiracy existed, that the defendant was part of the conspiracy, and that the statement was made both during the course of the conspiracy and in furtherance of it.  See Bourjaily v. United States, 483 U.S.c 171, 175-76 (1987); United States v. Diaz, 176 F.3d 52, 83 (2d Cir. 1999).  The law is well settled in the Second Circuit that the government is not

required to produce the necessary preponderance of evidence under 801(d)(2)(E) <u>prior to</u> presenting testimony regarding a coconspirator statement.  Rather, statements proffered as coconspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the evidence needed to establish the 801(d)(2)(E) prerequisites. <u>United States v. Geaney</u>, 417 F.2d 1116, 1120 (2d Cir. 1969); <u>see also United States v. Ziegler</u>, 583 F.2d 77, 80 (2d Cir. 1978) ("As a concession to the practicalities of proof, since an entire case cannot be put in simultaneously but must proceed in sequence, the trial court in its discretion may admit a particular piece of evidence 'subject to connection'; but if at the close of the Government's case the connection has not been proved, the court must, upon motion, strike the insufficiently connected item and direct the jury to disregard it.").

Courts in this circuit often make 801(d)(2)(E) findings at the "close of the government's case."  <u>United States v. Lombardozzi</u>, No. S1 02 CR. 273(PKL), 2003 WL 1956290 at *2 (S.D.N.Y. Apr. 24, 2003); <u>see also United States v. Coffey</u>, 361 F.Supp.2d 102, 124, (E.D.N.Y. 2005) ("The Court will resolve any dispute concerning the admissibility of a co-conspirator statement offered by the Government under Fed.R.Evid. 801(d)(2)(E) at trial, consistent with its well-established practice. The Second Circuit expressly has approved the practice of admitting such statements at trial subject to the Government's introduction of evidence which will support the findings required by <u>Bourjaily</u> . . . ."). Thus the Court may and should, as practical matter, make its final determinations regarding the recordings at the close of the government's case. This procedure will also decrease the burden on the Court, as it will allow the Court to avoid reviewing and ruling on the more than 50 recordings produced to the defendants.  Instead, the Court will be able to confine its determinations to those particular recordings that are actually offered and objected to at trial.

VI.  The Order By Justice Kornreich Is Admissible Against Dupree, And Any Potentially Undue Prejudice To Watts And Foley Could Be Removed With A Limiting Instruction

In the course of litigating Dupree's post-arrest bank fraud (Count Five of the Indictment), Dupree has argued that the August 4, 2010 order by Justice Kornreich in New York County Supreme Court is inadmissible.  In fact, the August 4 order is admissible to show that Dupree knew he was obligated to deposit

the collections of GDC's subsidiaries at Amalgamated Bank, and that he intended to violate that obligation.[2]

The government is not seeking to admit any findings of fact by Justice Kornreich – indeed, her order does not contain any findings of fact.  See, e.g. Order at ¶ 11 (". . . it is FURTHER ORDERED that pending a ruling by the Court on or after a hearing set by this Order to Show Cause, good cause having been ~~shown~~ alleged, the following temporary relief is granted . . . .")(striking proposed word "shown" and inserting "alleged"). Nor is the government seeking to introduce any credibility findings by Justice Kornreich; the order contains no such findings.

Rather, the government is seeking to prove Dupree's knowledge, which is a permissible use under Federal Rule of Evidence 803(8)(C).  See Johnson v. Clark, No. 2:03CV490FTM33DNF, 2006 WL 289107 (M.D. Fla. Feb. 7, 2006) (finding that state court orders were not hearsay when used to establish "the fact that judicial proceedings took place with respect to the sales of the property, and that the transactions at issue here were approved by probate courts in Virginia and Florida . . . [and] the dates of the orders and the date of the property sales as stated in the orders.").  In fact, the date of Justice Kornreich's order and the judicial acts it represents are not only proper evidence, but also proper subjects for judicial notice.  See United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994)("a court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation.")(citations omitted).  However, the government is not even asking the Court to take judicial notice of the judicial acts that Justice Kornreich's order represents.  The government asks only that Justice Kornreich's order be published to the jury for the purposes that this Court has previously anticipated.

---

[2]   See Doc. 286, Slip Op., July 28, 2011 at n.1 (". . . the August 4 Order is potentially relevant to show defendant Dupree's knowledge and intent to violate the Agreement to maintain all operating accounts at the Bank and deposit all of the subsidiaries' revenue at Amalgamated"); id. at n.2 ("The government may move to admit the August 4 Order as evidence that defendant Dupree knew he was obligated to deposit the collections of the subsidiaries at Amalgamated Bank, and the court will consider that application at the appropriate time.")

CONCLUSION

      For the reasons given above, the government respectfully requests that the Court grant the government's motions <u>in</u> <u>limine</u>.

                Respectfully submitted,

                LORETTA E. LYNCH
                United States Attorney
                Eastern District of New York

By:     /s/
                Michael L. Yaeger
                Assistant U.S. Attorney
                (718) 254-6075

cc:  All defendants (by ECF)