UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

     -against-                   **MEMORANDUM AND ORDER**

                                   10-CR-627 (KAM)

COURTNEY DUPREE

               Defendant.
----------------------------------X

**MATSUMOTO, United States District Judge:**

## INTRODUCTION

       Defendant Courtney Dupree ("Dupree") again moves this court to reconsider the prior rulings of this court and Judges Pollak and Vitaliano on the pretrial detention of Dupree and to order his release pursuant to 18 U.S.C. § 3142(i) for at least two weeks prior to and through the duration of his trial currently scheduled to commence on December 5, 2011. For the reasons set forth below, Dupree's motion for release for trial is denied. The court is, however, cognizant of the limitations to which Dupree is subject at his current detention facility, the Metropolitan Detention Center in Brooklyn, New York ("MDC"). MDC will arrange for the following to be provided to Dupree at MDC so that he can adequately prepare for and participate in his defense with counsel: (1) access to an attorneys' visiting room with a computer that can read DVDs from 9:00 a.m. to 3:30 p.m., with or without counsel, beginning on November 7, 2011 and until

1

the start of trial on December 5, 2011; (2) Dupree's access to the aforementioned attorneys' visiting room can be extended from 3:30 p.m. to 9:30 p.m., provided Dupree is with counsel during this time and twenty-four hour notice is given to MDC for each day an extension is requested; (3) access to counsel and agents of his counsel in an attorneys' visiting room with a computer that can read DVDs following each trial day until 9:30 p.m., provided that twenty-four hour notice is provided to MDC for each day such access is requested; and (4) access to a locked storage area for the storage of documents so that Dupree has additional space other than his detention cell to store documents.

In addition, the court shall arrange for Dupree's counsel to have the ability to make copies during trial, including but not limited to allowing counsel to bring a portable printer or other electronic copying device for use in the courtroom before trial, after trial, and during breaks in the trial proceedings so that Dupree can be provided with documents to review at the end of each trial day.

## BACKGROUND

Familiarity with the facts and prior opinions of this court in this matter is presumed and only the background relevant to this motion is set forth below.

## I.   The Charges Against Dupree

Dupree is charged in all five counts of a five-count second superseding indictment.  (*See* ECF No. 295, Superseding Indictment ("S-2 Indictment").)  His co-defendants Thomas Foley ("Foley") and Rodney Watts ("Watts") (together with Dupree, "defendants") are charged in three counts of the S-2 Indictment, and Watts is charged in four of the counts.  Count One charges all defendants with Conspiracy to Commit Bank, Mail and Wire Fraud in violation of 18 U.S.C. §§ 1349, 3551 *et seq.*  (*Id.* ¶¶ 18-19.)  Count Two charges all defendants with Bank Fraud in violation of 18 U.S.C. §§ 1344, 2, 3551 *et seq.*  (*Id.* ¶¶ 20-21.) Count Three charges defendants Dupree and Watts with making a False Statement in violation of 18 U.S.C. §§ 1014, 2, 3551 *et seq.*  (*Id.* ¶¶ 22-23.)  Count Four charges all defendants with making a False Statement by "knowingly and intentionally [making] a false statement and report, and willfully overvalu[ing] property and security, for the purpose of influencing the action of Amalgamated Bank upon one or more loans" in violation of 18 U.S.C. §§ 1014, 2, 3551 *et seq.*  (*Id.* ¶¶ 24-25.)  Finally, Count Five charges only defendant Dupree with an additional count of Bank Fraud in violation of 18 U.S.C. §§ 1344, 2, 3551 *et seq.*  (*Id.* ¶¶ 26-27.)

The S-2 Indictment charges that defendant Dupree was the president and chief executive officer of GDC Acquisitions,

LLC ("GDC").  (*Id.* ¶ 2.)  The first four counts arise out of an alleged scheme to defraud Amalgamated Bank ("Amalgamated"), a financial institution, and C3 Capital, LLC, a private equity investment firm, by obtaining, and attempting to obtain, loans for GDC's subsidiaries, guaranteed by GDC, on the basis of false financial statements and other material misrepresentations between January 2007 and July 2010.  (*Id.* ¶¶ 5, 6, 8.)

Count Five was originally included in a superseding indictment filed on March 25, 2011 (ECF No. 155, Superseding Indictment ("S-1 Indictment")), and charges only Dupree with an additional count of bank fraud for "knowingly and intentionally execut[ing] and attempt[ing] to execute a scheme and artifice to defraud Amalgamated Bank, and to obtain moneys, funds, credits and other property owned by, and under the custody and control of, Amalgamated Bank by means of materially false and fraudulent pretenses, representations and promises" between August 4, 2010 and March 1, 2011.  (S-2 Indictment ¶ 27.)

## II.  Dupree's Pretrial Release

Dupree was arrested on July 23, 2010, on the basis of a criminal complaint and affidavit, and released later that day on an $800,000 appearance bond with the following conditions: (1) Dupree must remain in and may not leave New York and New

Jersey without court permission[1]; (2) he shall avoid all contact and not associate with former co-defendant Frank Patello except in the presence of counsel; (3) he shall surrender any and all passports to the United States Pretrial Services Agency by July 26, 2010 and shall not apply for any other passport; (4) he is placed under the express supervision of the Pretrial Services Agency, subject to random visits at his home and/or place of work, and must report to that agency in person on a bi-weekly basis and by telephone as directed; and (5) he must not commit any federal, state, or local crime during the period of release. (*See* ECF No. 5, Order Setting Conditions of Release and Bond; Dupree Mem. at 2-3.) Dupree was subsequently charged in a four-count indictment returned on August 13, 2010, which charges the same first four counts of the S-2 Indictment.(*See* ECF No. 22, Indictment.)  After his indictment and arraignment on the Indictment, Dupree's release continued on the same conditions imposed after his arrest.

### III. Dupree's Pretrial Detention

On March 16, 2011, Dupree was arrested on a new criminal complaint and affidavit alleging that he orchestrated

---

[1] While no such Order appears on the docket, according to Dupree, this Order was "amended on August 23, 2010 to include travel to Washington, D.C., California, Connecticut, and Texas for business purposes and elsewhere in the continental United States with five (5) days notice to Pretrial Services and the Assistant United States Attorney."  (ECF No. 362-1, Memorandum of Law in Support of Defendant Dupree's Motion for Release for Trial ("Dupree Mem.") at 2-3.)

another scheme to defraud Amalgamated, the same financial institution that was the subject of the original Indictment. Following his arrest, Dupree appeared before Magistrate Judge Pollak who revoked Dupree's bond and ordered pretrial detention finding the following: (1) "the government has presented sufficient evidence . . . that [Dupree], at the very least, violated the conditions of the bond by committing additional crimes"; (2) "by clear and convincing evidence that [Dupree] presents a financial danger to [Amalgamated]"; (3) "[t]here's no terms or conditions that . . . could mitigate that risk"; and (4) "having already been charged with bank fraud and being under very specific orders not to commit another crime . . . I have no choice." (ECF No. 131, Transcript of Proceedings as to Courtney Dupree held on March 16, 2011 ("March 16, 2011 Tr.") at 31, 34.)

Dupree then sought review of Judge Pollak's order in front of District Court Judge Vitaliano, who at the time was acting in the capacity of Miscellaneous Duty judge. On March 18, 2011, Judge Vitaliano denied Dupree's appeal finding that Dupree should be detained until the resolution of his case because (1) "[t]here is probable cause to believe that another crime is committed . . . by a preponderance of the evidence . . . [which] violates the condition in the bond initially signed"; (2) there is "a disregard for . . . court orders by Mr. Dupree"; and (3) "there is no condition or combination of conditions that

will assure [that] Mr. Dupree . . . will not continue to be an economic and financial threat that would lea[d] to further disregard and violation of orders relating to his release." (Transcript of Proceedings as to Courtney Dupree held on March 18, 2011 ("March 18, 2011 Tr.") at 34-35.)

Less than two weeks after Judge Vitaliano's ruling, Dupree was charged with the additional count of bank fraud in the S-1 Indictment returned on March 25, 2011. On March 30, 2011, this court heard Dupree's application for pretrial release on the S-1 Indictment and denied it based on the record before it and Judge Pollak's and Judge Vitaliano's rulings, but granted Dupree leave to present a better bail application. (*See* ECF No. 362-2, Transcript of Proceedings as to Courtney Dupree held on March 30, 2011 ("Mar. 30, 2011 Tr."); Minute Entry dated May 31, 2011.) After Dupree was subsequently charged in the S-2 Indictment returned on August 3, 2011[2], the court heard Dupree's motion for reconsideration for bond and denied it without prejudice with leave to reapply. (Minute Entry dated August 5, 2011.)

---

[2] The S-2 Indictment was filed because Count Five of the S-1 Indictment was dismissed as insufficient on July 28, 2011. (ECF No. 286, Memorandum and Order at 12-13.) The court dismissed Count Five without prejudice and with leave for the government to re-present the matter to the grand jury, which it subsequently did. (*Id.* at 17.) The S-2 Indictment amended the S-1 Indictment by adding a paragraph stating that the loan agreement at issue required GDC and its subsidiaries "to maintain all of their operating bank accounts at Amalgamated Bank, and to deposit all of their revenue, upon receipt, into an operating account at Amalgamated." (S-2 Indictment ¶ 13.)

## IV. The Instant Motion

Presently before the court is Dupree's motion for release for trial, which is his fifth application for release – the third before this court – since his arrest on Count Five. Dupree moves this Court to reconsider its prior rulings on pretrial detention and to order his release pursuant to 18 U.S.C. § 3142(i) at least two weeks prior to and during his trial to "an apartment, hotel or other suitable premises, at his own expense, under strict supervision so that he can obtain greater access to counsel, meet more readily with his co-defendant and his attorney, be present during interviews of witnesses necessary to the preparation of his defense, and review documents relevant to his defense." (Dupree Mem. at 1-2.)

## DISCUSSION

Dupree makes two arguments in favor of his motion: (1) pretrial release is "necessary" for the preparation of and his participation in his defense under 18 U.S.C. § 3142(i) and (2) his pretrial detention since March 16, 2011 violates the Due Process Clause of the Fifth Amendment of the United States Constitution. Each of these arguments will be addressed in turn.

## I. Pretrial Release Under 18 U.S.C. § 3142(i)

Dupree seeks release under a provision in Section 3142(i) which provides that, after a defendant has been detained, a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."[3] 18 U.S.C. § 3142(i). A defendant has the burden of showing that temporary release is "necessary for preparation of the person's defense" under Section 3142(i). *See United States v. Jeffries*, No. 3:10-CR-100, 2011 U.S. Dist. LEXIS 5597, at *12 (E.D. Tenn. Jan. 20, 2011) ("[T]he Court finds that the Defendant has failed to show that his release is necessary for the preparation of his defense."); *United States v. Birbragher*, No. 07-CR-1023-LRR, 2008 U.S. Dist. LEXIS 42676, at *3-4 (N.D. Iowa May 28, 2008) (same).

Dupree argues that his ability to prepare for and participate in his defense, which requires the review of "thousands of pages of documents" and his participation in "witness interviews, meetings with other defense counsel, [and]

---

[3] In his reply brief, Dupree requests that he be released into the custody of Chauncey Dupree or Stephanie Horton, both of whose relationship to Dupree is not revealed, for the two weeks prior to trial, and to defense counsel for the duration of the trial. (ECF No. 401, Reply in Support of Defendant Dupree's Motion for Release for Trial ("Reply") at 3.)

strategy meetings," is impaired because he is detained and subject to several limitations at MDC. (Dupree Mem. at 1, 5-6.) As stated by Dupree, the limitations at MDC include the following: (1) 300 minutes of monitored, shared telephone access per month with each call limited to fifteen minutes in duration and a mandatory one-hour waiting period between calls; (2) limited computer access with a monitored email account that is unable to receive attachments and has character limits; (3) no access to counsel in the mornings before trial and limited access after the trial day due to MDC's visiting hours and transportation procedures; (4) limited storage space at MDC for maintaining documents; and (5) no access to GDC and its subsidiaries' accounting database, called the "Hedberg database," which consists of a server and two computers that cannot be transported to MDC and which requires Hedberg software and an operating platform and license that is not available at MDC. (*Id*. at 5-6; Reply at 4-6.) In addition, Dupree states that he is "incurring a substantial amount of attorneys' fees" because he is not able to travel to counsel for document and transcript review and his counsel must make costly trips to Brooklyn. (Dupree Mem. at 2.)

In response, the government argues that Dupree's release is not "necessary" to prepare his defense to satisfy the requirements of 18 U.S.C. § 3142(i) because (1) Dupree has had

ample time to prepare for trial, with the government producing documents as early as August 13, 2010, the day the original indictment was returned; (2) he can review large volumes of discovery materials on DVDs at a computer in his unit of MDC or the library; (3) any inconvenience due to Dupree's confinement, which is common to all incarcerated defendants, does not render his release "necessary"; and (4) Dupree can apply for funds if he cannot afford the substantial fees being incurred by his retained Washington D.C.-based counsel. (ECF. No. 378, Response in Opposition re Motion for Bond/Release for Trial ("Opp'n") at 4-5.)

The court finds the government's arguments to be persuasive. In his moving papers, Dupree fails to cite a single case supporting his release under the provision at issue in Section 3142(i), and he has not made an adequate showing that his release is "necessary" for the preparation of his defense. *See* 18 U.S.C. 3142(i). Nor does Dupree mention any other "compelling reason" that would permit the court to order his release. *Id.*

First, Dupree is in custody at the present time because his release was revoked pursuant to 18 U.S.C. § 3148 after Judge Pollak, Judge Vitaliano, and this court found that there is probable cause to believe that Dupree committed another federal crime, bank fraud, while he was on pretrial release against the

same victim as the charges then pending against him, namely
Amalgamated, thereby violating one of the conditions of his
release. *See* 18 U.S.C. § 3148(b)(1)(A). Based on the finding
of probable cause that Dupree committed this additional crime
during his pretrial release, Judge Pollak, Judge Vitaliano, and
this court have also found that there is no condition or
combination of conditions that will assure that Dupree does not
pose a danger to Amalgamated. *See id.* § 3148(b)(2) ("If there
is probable cause to believe that, while on release, the person
committed a Federal . . . felony, a rebuttable presumption
arises that no condition or combination of conditions will
assure that the person will not pose a danger to the safety of
any other person or the community."); *see also Jeffries*, 2011
U.S. Dist. LEXIS 5597, at *12 (denying temporary release under
Section 3142(i) where the "Court has found that the Defendant
must be detained because he is a danger to the community.").

There has been no change in circumstances to warrant
reconsidering these findings. Dupree argues that "there is no
way for [him] to now interfere with the flow of collections
[owed] . . . to the bank" because Amalgamated automatically
collects such payments, he is "cut off from all accounts at
Amalgamated," and the government has frozen his other corporate
accounts. (Dupree Mem. at 9 n. 1.) The fact that the
government and Amalgamated have at least partially succeeded in

taking actions to prevent Dupree from causing further harm, however, is not a reason in favor of granting release. The government has shown probable cause to believe that Dupree, the owner and CEO of GDC and owner of its subsidiaries, was able to obtain funds that arguably were due to Amalgamated, open bank accounts in his sole control at other banks, and thereby obstruct Amalgamated's ongoing collection efforts from GDC and its subsidiaries. (*See* Opp'n at 11.) Moreover, in light of the probable cause showing of Dupree's commission of another federal crime while on release, Dupree has not shown by his past conduct that he can be taken at his word to abide by any additional conditions if he were again released,[4] and he has not rebutted the presumption that no condition or combination of conditions could reasonably assure the safety of Amalgamated. *See* 18 U.S.C. § 3148(b)(2); *see also United States v. Mustachio*, 254 Fed. Appx. 853, 854 (2d Cir. 2007) (affirming an order of detention entered pursuant to 18 U.S.C. § 3148(b) where defendant's "post-release criminal conduct . . . posed a risk to

---

[4] Dupree suggests that, along with the original conditions imposed after his initial arrest, the following additional conditions will ensure his appearance, provide adequate protection for Amalgamated, and enable him to participate fully in his defense: "(1) electronic or telephonic monitoring; (2) identification of all accounts to which Mr. Dupree has a personal property interest, which will then be signed over to a third party for control, depriving him of the ability to make deposits; and (3) no new accounts will be opened until the conclusion of this matter." (Dupree Mem. at 11.) The government finds this proposal to be "wholly inadequate." (Opp'n at 12.)

victims' financial security" and the government had conceded that defendants are unlikely to flee the court's jurisdiction).

Second, while Dupree's release would certainly make it more convenient for him and his counsel to prepare his defense, his release is not "necessary" for the preparation of his defense under 18 U.S.C. § 3142(i).  There is limited authority in the Second Circuit addressing when a defendant's release is "necessary" for the preparation of his defense under Section 3142(i).  In *United States v. Persico*, No. S 84 Cr. 809 (JFK), 1986 U.S. Dist. LEXIS 27586 (S.D.N.Y. Mar. 27, 1986), the defendant, whose release had not been previously granted and revoked, requested temporary release under Section 3142(i) for many of the same reasons propounded by Dupree, including greater telephone access and the ability to meet more readily with his co-defendants and their attorneys and to conduct in-person interviews of witnesses.  *Id.* at *2.  Notwithstanding the limited access the defendant had to telephones and the Attorney's Conference Room for consultation with counsel, the court denied the request finding that the defendant "had ample time and opportunity to participate in the preparation of his defense and has, to the Court's knowledge, availed himself thereof."  *Id.* at *5.  In *Persico*, the defendant had over a year to prepare for his trial, "obtained a lengthy adjournment of trial to allow the[] preparation of defense motions, of which

14

there was no dearth," and "[d]uring all this time, of course, [defendant] ha[d] been permitted to meet with his defense counsel and co-defendants for consultation, review of documents and investigation of the charges against him." *Id*. at *4-5.

In the instant case, Dupree was released on bond on July 23, 2010, following his arrest on the complaint. The original indictment charging Dupree was returned on August 13, 2010, more than fourteen months ago. More than seven months ago, on March 16, 2011, Dupree was arrested on a new complaint alleging another scheme to defraud Amalgamated for which Dupree was ordered to be detained by Judge Pollak. The S-1 Indictment, which added an additional count of bank fraud, was returned on March 25, 2011.[5] Between July 23, 2010, the date of Dupree's release following his arrest on the complaint, and March 16, 2011, the date of his arrest on the second complaint, a period of nearly eight months, Dupree was on pretrial release and therefore had unfettered access to his counsel, his co-defendants and their counsel, the Hedberg database, and the majority of the documents relevant to his defense. Indeed, the government produced a majority of its evidence, including transcripts of recordings, while Dupree was on pretrial release. (Opp'n at 4.) After the revocation of his release, up to the

---

[5] The fact that the S-2 Indictment was filed on August 3, 2011 lends little support to Dupree's trial preparation argument because it did not add any new charges against him about which he was previously unaware of at the time of the S-1 Indictment. *See supra* note 2.

present time, Dupree has been able to meet with counsel, has had access to telephones, computers, email, and the library, and has been able to review documents in prison, albeit in a more limited fashion.  (*See* Dupree Mem. at 5-6; Reply at 4-5.) Dupree has had adequate time – nearly fourteen months – since the original indictment was returned to prepare for trial.  *See Birbragher*, 2008 U.S. Dist. LEXIS 42676, at *4 (denying temporary release where "Defendant will have had more than adequate time to prepare his defense – almost one year from the time of Indictment.").

The court is cognizant of Dupree's argument regarding "the complexity of this case and volume of information at issue."  (Reply at 2.)  These factors, alone, are not sufficiently compelling to find that Dupree's release is "necessary" for the preparation of his defense, as courts have ruled even in Section 3142(i) cases where a defendant's prior release had not been revoked.  *See United States v. Petters*, No. 08-364 (RHK/AJB), 2009 U.S. Dist. LEXIS 6489, at *7-8 (D. Minn. Jan. 28, 2009) ("While this [fraud] case may, in fact, be complicated and require Defendant to review hundreds if not thousands of documents and meet with his lawyers for dozens of hours, that fact, standing alone, simply does not justify Defendant's release. . . .  Indeed, accepting such an argument would mean that the more complicated the crime, the more likely

a defendant should be released prior to trial. This is clearly an absurd result."); *Birbragher*, 2008 U.S. Dist. LEXIS 42676, at *2-3 (denying temporary release in "an extremely complicated and document-intensive case").

Dupree attempts to distinguish *Persico*, *Petters*, and *Birbragher* based on the substantial risk of defendant's flight that was found to be present in those cases. (Reply at 6-7.) Although Dupree was not detained because he poses a flight risk, it has been found numerous times, based on Dupree' conduct charged in Count Five of the S-2 Indictment, that Dupree is unlikely to abide by any condition or combination of conditions of release, and that he continues to present a danger to Amalgamated, which are factors favoring continued detention that are not present in *Persico*, *Petters*, and *Birbragher*.

Third, because the court is mindful of the limitations to which Dupree is subject at MDC, the court has requested that MDC arrange for the following to be provided to Dupree at MDC so that he can adequately prepare for and participate in his defense with counsel: (1) access to an attorneys' visiting room with a computer that can read DVDs from 9:00 a.m. to 3:30 p.m., with or without counsel, beginning on November 7, 2011 and until the start of trial on December 5, 2011; (2) Dupree's access to the aforementioned attorneys' visiting room can be extended from 3:30 p.m. to 9:30 p.m., provided Dupree is with counsel during

this time and twenty-four hour notice is given to MDC for each day an extension is requested; (3) access to counsel and agents of his counsel in an attorneys' visiting room with a computer that can read DVDs following each trial day until 9:30 p.m., provided that twenty-four hour notice is provided to MDC for each day such access is requested; and (4) access to a locked storage area for the storage of documents so that Dupree has additional space other than his detention cell to store documents.  In addition, the court shall arrange for Dupree's counsel to have the ability to make copies during trial, including but not limited to allowing counsel to bring a portable printer or other electronic copying device for use in the courtroom before trial, after trial, and during breaks in the trial proceedings so that Dupree can be provided with documents to review at the end of each trial day.

Although the court does not find that the current conditions at MDC prevent Dupree from adequately preparing for trial, the additional accommodations by MDC warrant a finding that Dupree's release is not "necessary" for the preparation of his defense.  Through these arrangements, which shall go into effect on November 7, 2011, Dupree can meet with his counsel, expert witnesses, and others necessary to prepare his defense for as many as 12.5 hours per day for almost an entire month prior to trial, and also until 9:30 p.m. on each trial day.  In

addition, Dupree will have 12.5 hours of daily access to a computer that can read DVDs and be used to review documents. Finally, Dupree should have ample storage space for the specific documents he may wish to review, both in a locked storage area and in his detention area.[6]

While Dupree seeks release by the instant motion, he states in his reply brief that he "requests only that the Court fashion an appropriate remedy to allow him access to the evidence that will allow him to refute the allegations lodged against him." (Reply at 7.) The court finds that the foregoing arrangements at MDC are an "appropriate remedy."[7] *See Petters*, 2009 U.S. Dist. LEXIS 6489, at *7-8 (finding "little, if any" showing that defendant's defense is being prejudiced by his continued detention where special arrangements were made for his counsel to meet with him in a dedicated conference room with a computer seven days per week from 8:00 a.m. until 10:00 p.m. with limited exceptions and defendant is permitted to retain

---

[6] While this arrangement does not address Dupree's lack of access to the so-called Hedberg database, counsel has not made an adequate showing of why access to the Hedberg database is "necessary" for the preparation of Dupree's defense or why counsel is unable to review the relevant financial records from the Hedberg database with Dupree through the use of printouts or DVDs. It would be inappropriate if a defendant charged with financial fraud could cause his own release by using a computer database that can only be accessed and used outside of any detention facility.

[7] The court finds Dupree's complaint that he is incurring "a substantial amount of attorneys' fees" to be unpersuasive. (Dupree Mem. at 2.) While Dupree certainly has the right to choose his counsel, he should not be heard to complain that his choice of Washington D.C.-based counsel and "costly travel by his counsel to Brooklyn" warrants his release. (*Id.*)

documents in his cell overnight); *Birbragher*, 2008 U.S. Dist. LEXIS 42676, at *2-4 (finding that the jail administrator's arrangement permitting defendant's attorneys to bring a computer and CDs and meet with defendant in a conference room between the hours of 1:00-4:30 p.m. and 6:00-9:00 p.m. daily provides defendant "more than adequate time to consult with his attorneys and the requisite means to prepare his defense"); *see also Jeffries*, 2011 U.S. Dist. LEXIS 5597, at *12 (denying temporary release where "there appear to be means short of release that would permit defense counsel to access and review the Defendant's Facebook account, such as . . . bringing a laptop computer to the facility where the Defendant is detained."); *United States v. Hazelwood*, No. 1:10 CR 150, 2011 U.S. Dist. LEXIS 21399, at *9-10 (N.D. Ohio Feb. 16, 2011) (denying defendant's temporary release to view discovery documents where defendant was given "substantial accommodations . . . beyond those accorded most detainees based on the complex nature of this case," including possessing more boxes of information than other inmates and a video conference room substantially devoted to defendant's use).

## II.  Pretrial Release as a Violation of Due Process

"It is well settled that so long as pretrial detention is administrative rather than punitive, it is constitutional." *United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000).  A

determination of whether a pretrial detention is administrative
or punitive "turns on whether the government has a nonpunitive
reason for detention and whether the detention appears excessive
in relation to the nonpunitive purpose." *United States v.
Millan*, 4 F.3d 1038, 1043 (2d Cir. 1993) (internal citations
omitted).  In evaluating whether a "pre-trial detention has
become unconstitutionally excessive, a court must weigh: (1) its
length, (2) the extent of the prosecution's responsibility for
delay of the trial, (3) the gravity of the charges, and (4) the
strength of the evidence upon which detention was based, *i.e.*,
the evidence of risk of flight and dangerousness." *El-Hage*, 213
F.3d at 79; *see United States v. El-Gabrowny*, 35 F.3d 63, 65 (2d
Cir. 1994); *see also United States v. Barone*, No. S1 09 Cr. 91
(NRB), 2010 U.S. Dist. LEXIS 57965, at *6 (S.D.N.Y. June 11,
2010).[8]

Dupree contends that his pretrial detention violates
due process because (1) he has already been in pretrial
detention for seven months and will have been in detention for
nine months at the time his trial is scheduled to commence,

---

[8] Both parties cite to *United States v. Orena* for the standard on
evaluating the due process implications of pre-trial detentions.  986 F.2d
628 (2d Cir. 1993); (*see* Dupree Mem. at 7; Opp'n at 5.)  The standard cited
by the Second Circuit in that case includes three factors: "(i) the length of
detention, (ii) the extent of the prosecution's responsibility for the delay
of the trial; and (iii) the strength of the evidence upon which the detention
was based, in this case, evidence of [defendant's] danger to the community."
*Orena*, 986 F.2d at 630 (citations omitted).  The standard employed by the
court today considers an additional factor, the gravity of the charges.

which has caused the preparation of his defense to suffer
(Dupree Mem. at 7-9); (2) any delay of trial caused by defense
counsel was done to protect and preserve Dupree's rights and
should not be given any weight in the analysis (*id.* at 10); (3)
his detention based on Count Five, which he is alleged to have
committed while on release pending trial, is based on attenuated
evidence (*id.*); and (4) Dupree is not a flight risk or danger to
the community (*id.* at 11).

In response, the government argues that (1) Dupree's
detention is "well-within acceptable norms and is not enough, by
itself, to warrant his release" (Opp'n at 5); (2) the defendants
have made numerous and repeated motions throughout the case and
are responsible for any delay (*id.* at 6-7); (3) three judges
have found on separate occasions that there was probable cause
that Dupree committed a crime on bond (*id.* at 7-10); and (4)
Dupree has not rebutted the presumption that no conditions will
assure that he will not pose a danger to others (*id.* at 10-12).
Each of the four factors described above will be addressed in
turn.

### A.    Length of Pretrial Detention

The length of a defendant's pretrial detention alone
is not "dispositive"; rather, the court must consider all four
factors in evaluating whether the detention violates the
defendant's due process rights.  *El-Hage*, 213 F.3d at 79; *see*

*Orena*, 986 F.2d at 631 ("[G]iven the multi-factor test . . . the length of a detention period will rarely by itself offend due process.") Additionally, "[n]o particular time period marks the constitutional limit of pretrial detention; each case must be examined on its own facts." *El-Gabrowny*, 35 F.3d at 65 (citing *United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986)). In *El-Gabrowny*, the court concluded that defendant's twenty-seven month detention, though "unquestionably a long duration[,]" did not violate his due process rights. *Id.; see also El-Hage*, 213 F.3d at 78, 81 (holding that a thirty to thirty-three month pretrial detention was regulatory and not violative of due process rights); *Orena*, 986 F.2d at 630 (holding that a nine month detention did not "exceed[] allowable limits"); *United States v. Berrios-Berrios*, 791 F.2d 246, 252 (2d Cir. 1986) (holding that "pretrial detention for eight months has not been unconstitutional"); United States *v.* *Morrison*, No. 04-CR-699, 2006 U.S. Dist. LEXIS 50219, at *3, 31 (E.D.N.Y. July 21, 2006) (finding that a two year pretrial detention did not violate defendant's due process rights).

Here, defendant Dupree will have been detained for nine months when his trial commences. As this detention is similar in length to the nine-month detention found constitutional in *Orena*, 986 F.2d at 630, and well shorter than the two-year detention found to be constitutional in *Morrison*,

2006 U.S. Dist. LEXIS 50219, at *3, the court acknowledges that "the length of detention . . . does not in and of itself offend due process." *Orena*, 986 F.2d at 631.

> B.  *The Prosecution's Responsibility for Delay*

Turning next to the extent to which the prosecution bears responsibility for the delay of trial, "this inquiry involves purely factual determinations." *United States v. Melendez-Carrion*, 820 F.2d 56, 60 (2d Cir. 1987).  The court finds that the government is largely not responsible for delay. Defendants have requested several extensions of deadlines and have made countless motions, as in their right, including several motions to reconsider, in this case*.  See*, *Gonzales Claudio*, 806 F.2d at 341 ("[D]efendants cannot litigate pretrial matters to the ultimate degree and then rely on the extra time attributable to their motion practice to claim that the duration of pretrial detention violates due process.").  For example, the instant motion to reconsider is Dupree's fifth attempt to seek release since his arrest on March 16, 2011, for which he has had four hearings in front of three judges, including two before this court.  Although the government has filed one motion to reconsider in this case and requested its fair share of modest extensions, the government has responded to defendants' numerous motions often on an expedited schedule and, thus far, has

satisfied its obligations to produce materials to defendants in a timely manner.

Furthermore, both parties agree that this is a complex, document-intensive case, and any justifiable delays stemming from such complexity cannot be attributed to the government. (Dupree Mem. at 10; Opp'n at 7); *see El-Hage*, 213 F.3d at 80 (finding that the "prosecution appears to bear very little responsibility for the delay of trial" where "the underlying case is of exceptional complexity and . . . discovery and trial preparation are of necessity extremely time-consuming for both sides"); *El-Gabrowny*, 35 F.3d at 65 ("[T]he importance and complexity of the case and the extensive evidence . . . reasonably require a lengthy period for pretrial preparation.").

While trial was originally scheduled to begin as early as October 12, 2010, all parties filed letters requesting that the trial date be adjourned and that the case be designated complex for purposes of the Speedy Trial Act. (*See* ECF No. 34, Scheduling Order dated September 8, 2010.) After a new trial date of April 25, 2011 had been established, because of "the nature of the prosecution, the voluminous discovery, and the recent superseding indictment," the court found that "the ends of justice are best served by a later trial date" and adjourned trial a second time to July 5, 2011. (Minute Entry dated March 25, 2011.) The government expressed its readiness to proceed to

trial at several conferences before the court.  Finally, at the

request of Dupree and co-defendant Watts, the trial was

adjourned a third time to the currently scheduled date of

December 5, 2011.  (Minute Entry dated June 2, 2011; Minute

Entry dated September 13, 2011.)

Based on the history of this case, the court finds

that the government is not responsible for the delay in bringing

Dupree to trial, and the court concludes that this factor weighs

against finding that Dupree's due process rights were violated

by his continued pretrial detention.

## C.    *The Gravity of the Charges*

The court finds that the gravity of Dupree's charges

weigh in the government's favor.  Dupree is charged with

orchestrating a multi-million dollar scheme to defraud

Amalgamated Bank and C3 Capital.  (S-2 Indictment ¶ 8.)  The

indictment alleges that Dupree's company, GDC, and its

subsidiaries entered into an agreement in 2008 with Amalgamated

to borrow up to $21 million, and that Dupree and his co-

defendants "deliberately and falsely overstated the accounts

receivable on the consolidated financial statements and

[Borrowing Base Certificates] supplied to Amalgamated," upon

which Amalgamated relied to determine the amount that GDC and

its subsidiaries could borrow in any given month.  (*Id.* ¶¶ 9,

11, 14.)  Dupree is also charged with "further defraud[ing]

Amalgamated Bank by having GDC purchase Image Lighting, Inc. covertly, contrary to the terms of the [loan agreement], and by concealing the purchase from Amalgamated." (*Id.* ¶ 15.) Moreover, it is alleged that Dupree and his co-defendants "attempted to obtain approximately $5 million in funding from C3 Capital by submitting false financial statements and accounts receivable aging reports." (*Id.* ¶ 16.) Finally, Count Five charges Dupree with bank fraud committed after Dupree was arrested and released on bond, and alleges that he "converted approximately $331,000 in customer payments" that were owed to Amalgamated "to his personal use."[9] (*Id.* ¶ 17.)

Together, these alleged offenses, and the millions of dollars involved in the various frauds, constitute serious charges against Dupree. *See United States v. Mayala*, No. 08-CR-42 (JBW), 2009 U.S. Dist. LEXIS 37793, at *4 (E.D.N.Y. Mar. 26, 2009) ("The crime is serious because [defendant] facilitated bank fraud and caused losses to innocent victims."); *see also United States v. Agugbo*, No. 00-CR-94 (RPP), 2000 U.S. Dist. LEXIS 6914, at *6 (S.D.N.Y. May 19, 2000) (finding bank fraud to be a serious offense under the Speedy Trial Act because it "is punishable by a maximum of thirty years in prison and a $1,000,000 fine").

---

[9] 18 U.S.C. § 3147 provides that a person convicted of an offense committed while released shall face an additional sentence of not more than ten years if the offense is a felony.

> D. *The Strength of the Evidence Upon Which*
> *Detention Was Based*

The fourth and final factor in the analysis evaluates the "strength of the evidence upon which the detention was based," in this case, evidence of Dupree's danger to Amalgamated. *Orena*, 986 F.2d at 630. "[T]he constitutional limits on a detention period based on dangerousness to the community may be looser than the limits on a detention period based solely on risk of flight [because] [i]n the former case, release risks injury to others . . . ." *Id.* at 631. The court may also consider "economic harm" as evidence of dangerousness. *U.S. v. Madoff*, 586 F. Supp. 2d 240, 253 (S.D.N.Y. 2009).

The government contends that the evidence against Dupree warrants continued detention because of his propensity to cause further financial injury to Amalgamated. (Opp'n at 10-12.) Although Dupree argues that the evidence against him is "attenuated" (Dupree Mem. at 10), this court and two other courts have found that "[t]here is ample evidence that [defendant] constitutes a danger to 'the safety of . . . other persons and the community.'" *Orena*, 986 F.2d at 631 (quoting 18 U.S.C. § 3142(e)). Specifically, the government has sufficiently established probable cause to believe that Dupree fraudulently converted approximately $331,000 in customer payments owed to Amalgamated under the loan agreement and used

that money for various personal expenditures, including but not limited to payment of a car lease, rent for his apartment, and fees for his lawyers. (*See* S-2 Indictment ¶ 17; Opp'n at 9, Ex. A; March 16, 2011 Tr. at 4-6; March 18, 2011 Tr. at 17-20; March 30, 2011 Tr. at 22-29.) The government has presented evidence to establish probable cause to believe Dupree has defrauded Amalgamated on multiple occasions, including while he was on release. His continued detention is warranted to protect Amalgamated from yet another fraudulent scheme.

Because the length of detention alone is not dispositive, the government is largely not responsible for trial delay, Dupree's alleged offenses are serious, and Dupree continues to pose a risk to Amalgamated, the court "discern[s] no constitutional impediment to [his] continued detention." *Millan*, 4 F.3d at 1049. These four factors, taken together, justify continued detention, especially in view of the fact that trial is scheduled to start in approximately a month's time. *See El-Gabrowny*, 35 F.3d at 65.

## CONCLUSION

For the reasons set forth above, Dupree's motion for release for trial is denied. The court is, however, cognizant of the limitations to which Dupree is subject at MDC. Therefore, the following accommodations will be provided to Dupree at MDC so that he can adequately prepare for and

participate in his defense with counsel: (1) access to an
attorneys' visiting room with a computer that can read DVDs from
9:00 a.m. to 3:30 p.m., with or without counsel, beginning on
November 7, 2011 and until the start of trial on December 5,
2011; (2) Dupree's access to the aforementioned attorneys'
visiting room can be extended from 3:30 p.m. to 9:30 p.m.,
provided Dupree is with counsel during this time and twenty-four
hour notice is given to MDC for each day an extension is
requested; (3) access to counsel and agents of his counsel in an
attorneys' visiting room with a computer that can read DVDs
following each trial day until 9:30 p.m., provided that twenty-
four hour notice is provided to MDC for each day such access is
requested; and (4) access to a locked storage area for the
storage of documents so that Dupree has additional space other
than his detention cell to store documents.

    In addition, the court shall arrange for Dupree's
counsel to have the ability to make copies during trial,
including but not limited to allowing counsel to bring a
portable printer or other electronic copying device for use in
the courtroom before trial, after trial, and during breaks in

the trial proceedings so that Dupree can be provided with documents to review at the end of each trial day.

**SO ORDERED.**

Dated: November 3, 2011
      Brooklyn, New York

                              _____/s/_____
                              KIYO A. MATSUMOTO
                              United States District Judge
                              Eastern District of New York