UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

UNITED STATES OF AMERICA

- against -

RODNEY WATTS,

              Defendant.
----------------------------------X

**MEMORANDUM AND ORDER**

10-CR-627 (KAM)

**MATSUMOTO, United States District Judge:**

### BACKGROUND

On May 7, 2013, defendant Rodney Watts ("Mr. Watts") filed a motion *in limine* to permit him to call a witness during his defense case to show that the testimony of cooperating witness Frank Patello ("Mr. Patello") is false. (ECF No. 716, Mot. to call a witness ("Watts Mot.").) Mr. Watts specifically seeks to call Mr. H. Stein ("Mr. Stein"), the financial advisor to R.A. and R.A.'s son. (*Id.* at 1.) Mr. Stein, R.A., and R.A.'s son have no involvement in, or relation to, the facts and circumstances relevant to the charges against Mr. Watts.

During the trial, Mr. Watts subpoenaed Mr. Stein and presented his testimony outside the presence of the jury on May 3, 2013, on a matter wholly unrelated to the issues at trial, specifically, a telephone conversation Mr. Stein had with Mr. Patello on or about April 10, 2013, regarding accounts belonging to R.A., a friend of Mr. Patello. (*See* Minute Entry of May 3,

2013.)  After the hearing, pursuant to the court's order of May 3, 2013, Mr. Watts was granted limited cross-examination of Mr. Patello at trial regarding his conversation with Mr. Stein. (*See* ECF No. 712, Order at 2-3.)

I. **Defendant's Contentions**

In his May 7th motion, Mr. Watts now seeks to call Mr. Stein for the purpose of establishing that Mr. Patello allegedly testified falsely at trial regarding what he told Mr. Stein during their telephone conversation on or about April 10, 2013, because Mr. Patello's allegedly false testimony "relates to" Mr. Patello's "bias in favor of the government and his motive to curry favor with them."  (Watts Mot. at 1-2.)  Relying on the advisory notes to Federal Rule of Evidence 608(b) and his Sixth Amendment right to confrontation, Mr. Watts seeks to present Mr. Stein's testimony to contradict Mr. Patello's testimony on cross-examination.  Mr. Watts contends that Mr. Patello denied making "the false and dishonest statement to Mr. Stein," and that Mr. Patello "committed an act of dishonesty after signing his cooperation agreement," rendering him biased because he is "more vulnerable to and dependent upon the government."  (*Id.* at 2-3.)  Mr. Watts further asserts that if Mr. Patello admits to dishonest conduct, the government could revoke Mr. Patello's cooperation agreement.  (*Id.* at 3.)  Subsequent to submitting his motion, through counsel, Mr. Watts added that specific

instances of Mr. Patello's testimony contradict Mr. Stein's hearing testimony on May 3, 2013. (*See* Trial Tr. at 2043-45 (delineating six asserted inconsistencies between the testimony of Messrs. Patello and Stein).)

**II. The Government's Opposition**

The government opposes Mr. Watts' motion, arguing, *inter alia*, that Mr. Stein's testimony is irrelevant, constitutes improper impeachment, and is inadmissible under Federal Rules of Evidence 402, 403, and 608. (*See* ECF No. 717, Response in Opp. to Watts Mot. ("Gov. Opp.") at 1.) Further, the government contends that Mr. Patello's testimony was not false and, even if it was, it would not provide an adequate basis to admit the extrinsic and irrelevant testimony of Mr. Stein. (*See id.* at 1-6.) According to the government, Mr. Patello's purported lie would not provide a basis to revoke Mr. Patello's cooperation agreement, or provide a basis to argue that Mr. Patello is biased. (*See id.* at 6-8.)

**DISCUSSION**

For the following reasons, and upon careful review of the cases cited by Mr. Watts and the court's own independent research, the court respectfully denies Mr. Watts' motion *in limine* to call Mr. Stein for the purpose of establishing that Mr. Patello testified falsely and is, therefore, biased in favor

3

of the government and is motivated to curry favor with the government.

Mr. Watts acknowledges that, pursuant to Rule 608(b), with the exception of a conviction for a crime pursuant to Rule 609, a party may not present extrinsic evidence of specific instances of the conduct of a witness for the purpose of attacking the witness's character for truthfulness.  (*See* Watts Mot. at 2; *see also Abel*, 469 U.S. at 55; Fed. R. Evid. 608(b).) Indeed, "cross-examination is generally the proper mechanism by which to test an adverse witness's credibility, and the use of extrinsic evidence to further pursue questions posed on cross-examination is generally not permitted."  *United States v. Shoreline Motors*, 413 F. App'x 322, 329 (2d Cir. 2011) (citing *United States v. Masino*, 275 F.2d 129, 133 (2d Cir. 1960) ("When a witness is cross-examined for the purpose of destroying his credibility by proof of specific acts of misconduct not the subject of a conviction, the examiner must be content with the answer.  The examiner may not, over objection, produce independent proof to show the falsity of such an answer.")).

Mr. Watts also correctly notes that Rule 608 was amended in 2003 "to clarify that the absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness," and not "to bar extrinsic evidence

4

for *bias*,[1] competency and contradiction impeachment." (Fed. R. Evid. 608, Advisory Committee's Note to 2003 Amendment (emphasis added).)  The Second Circuit has noted, "impeachment for bias is admissible under Rule 402 even when the impeachment material is not independently admissible under Rule 608." *United States v. Figueroa*, 548 F.3d 222, 229 (2d Cir. 2008).  Nonetheless, the *Figueroa* court recognized that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.* (quoting Fed. R. Evid. 403).  Whether to grant Mr. Watts' proposed elicitation of testimony from Mr. Stein depends on (1) whether Mr. Stein's testimony would establish Mr. Patello's bias in favor of the government, and (2) whether consideration of the factors delineated by Rule 403 militate for or against admission of Mr. Stein's testimony.

Regarding the first question, Mr. Stein's expected testimony does not evince a bias on Mr. Patello's part in favor of the government. (*See* Watts Mot. at 1, 3.)  Contrary to Mr.

---

[1] "Bias is a term used in the 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party.  Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest.  Proof of bias is almost always relevant . . . ." *United States v. Abel*, 469 U.S. 45, 52 (1984).  Mr. Watts does not raise competency or contradiction impeachment as grounds to present Mr. Stein's testimony.

5

Watts' argument, the fact that Mr. Patello and Mr. Stein have differing accounts of their April 2013 telephone conversation does not establish that Mr. Patello's testimony before the court about that conversation was false. Instead, what Mr. Patello told Mr. Stein over the telephone can only be ascertained by weighing the respective credibility, interests, and biases of each man regarding their conversation about this unrelated matter.

The need to weigh the credibility, interests, and biases of Messrs. Patello and Stein regarding their April 2013 conversation differs starkly from the circumstances in *United States v. Figueroa*, the primary case relied upon by Mr. Watts. (*See* Watts Mot. at 2-3.) In *Figueroa*, the Second Circuit held that a district court erred as a matter of law when it precluded the defendant, a member of a racial or ethnic minority, from eliciting on cross-examination that a government witness had swastika tattoos. 548 F.3d at 229-30. The Second Circuit specifically held that "[b]ecause the jury could have found that [the witness's] tattoos were indicative of bias, examination of him on that subject matter was relevant irrespective of its admissibility *vel non* under Rule 608." *Id.* at 230. Unlike a witness's swastika tattoos, the existence of which were not in dispute, and which are widely understood to strongly suggest that the wearer is biased against members of racial or ethnic

6

minority groups, Mr. Stein's expected testimony is not objective, stand-alone evidence of Mr. Patello's bias in favor of the government.

Further, the facts regarding Mr. Patello's conversation with Mr. Stein are also plainly distinguishable from those at issue in *Justice v. Hoke*, 90 F.3d 43 (2d Cir. 1996). In *Justice*, the Second Circuit reversed the denial of a writ of habeas corpus where a defendant had been precluded from presenting evidence of the prosecution's star witness's bias and motivation to fabricate the allegations against the defendant. *See id.* at 49. Specifically, the defendant had sought to present the testimony of two defense witnesses about a prior drug-related dispute between the defendant and the prosecution's star witness. *See id.* at 47. There, the extrinsic evidence of "bias would have corroborated key portions of" the defendant's defense of fabrication. *Id.* at 49. By contrast, Mr. Stein's expected testimony creates, at most, a conflict in the recollections of Messrs. Patello and Stein about their April 2013 telephone conversation that could only be resolved by the jury's credibility determinations between the men after considering their biases and interests in the unrelated matter that was the subject of their conversation. *See* Fed. R. Evid. 608(b). Consequently, a trial within the instant trial would be

required for the jury to determine if Mr. Patello's testimony regarding his telephone conversation with Mr. Stein was false.

The court notes that, "extrinsic proof tending to establish a reason to fabricate is never collateral and may not be excluded on that ground." *Justice*, 90 F.3d at 48; *see also United States v. James*, 609 F.2d 36, 46 (2d Cir. 1979) ("[B]ias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely"). The court, however, disagrees with Mr. Watts that the contradictory recollections of Mr. Patello and Mr. Stein necessarily evince a reason for Mr. Patello to fabricate testimony in favor of the government. Indeed, the government has represented that even assuming, *arguendo*, Mr. Watts' claim that Mr. Patello testified untruthfully about what he told Mr. Stein over the phone, Mr. Patello's purported lies on an issue unrelated to the issues in the instant prosecution of Mr. Watts would not provide a basis on which to revoke Mr. Patello's cooperation agreement. (*See* Gov. Opp. at 4-6.) Thus, notwithstanding Mr. Watts' *ipse dixit* assertion that Mr. Patello testified falsely regarding his conversation with Mr. Stein, the court finds that Mr. Patello's and Mr. Stein's inconsistent accounts of their April 2013 telephone conversation do not constitute admissible evidence of bias on the part of Mr. Patello in favor of the government. *See Justice*, 90 F.3d at 48

("[E]vidence of a witness' bias must be competent to be admissible, and the trial court has broad discretion to curtail exploration of collateral matters.").

The crux of Mr. Watts' argument is that Mr. Patello is motivated by self-interest and thus "is willing to lie" to retain his cooperation agreement with the government in order to increase his chances of obtaining the government's 5K1.1 letter and a more lenient sentence. (Watts Mot. at 3); *see Abel*, 469 U.S. at 52 ("Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest."). Thus, the strongest evidence of a bias by Mr. Patello in favor of his own self-interest is his cooperation agreement with the government, about which he was subject to extensive and lengthy cross-examination by defense counsel. *See United States v. Gomes*, 177 F.3d 76, 81 (1st Cir. 1999) ("[T]he cooperation agreement already gave the jury an ample and more solid reason to question [the witness's] testimony as the fruit of lenient treatment,").

Furthermore, Mr. Watts fails to articulate how Mr. Patello would be serving his own interests or the government's by lying under oath pursuant to a cooperation agreement that, according to Mr. Watts, would be at risk if Mr. Patello lies. (*See* Patello Cooperation Agreement ¶¶ 3, 17, 19, in evidence at trial as Def. Ex. 3500-FP-3.) Additionally, contrary to Mr. Watts' argument that Mr. Patello would be motivated to lie to

9

preserve his cooperation agreement, any lie told by Mr. Patello would instead stand to weaken his credibility, and therefore weaken the government's case and jeopardize Mr. Patello's cooperation agreement, which requires that he testify truthfully. (*See id.* ¶ 19.)

Lastly, the court considers Rule 403. *See Figueroa*, 548 F.3d at 230. Even assuming both that the jury would find that Mr. Stein's testimony established that Mr. Patello lied during his testimony, and that Mr. Patello's lie evinced a bias on his part in favor of the government and his own self-interest, the court finds that the questionable probative value of Mr. Stein's testimony is substantially outweighed by the danger of undue delay, misleading and confusing the jury, and unfair prejudice. *See* Fed. R. Evid. 403; *Figueroa*, 548 F.3d at 229 (discussing Rule 403); *see also United States v. Jeffers*, 402 Fed. App'x 601, 603 (2d Cir. 2010) (noting "the district court's discretion to impose reasonable limits on cross-examination based on, *inter alia*, unfair prejudice, needless delay, or marginal relevance"). Mr. Stein's testimony about his conversation with Mr. Patello regarding wholly unrelated and irrelevant matters would distract and confuse the jury from the issues relevant to this trial. Undue delay would result because the government would then have to be permitted to call witnesses about R.A.'s statements that arguably corroborate Mr. Patello's

account of his telephone conversation with Mr. Stein.  The jury would be forced to engage in a trial within this trial by making credibility determinations as between Messrs. Patello and Stein, after considering each witness's own bias and motivations.  The jury would next have to decide which portions of Mr. Patello's account to credit or discredit, and which portions of Mr. Stein's account to credit or discredit, based on their accounts of their conversation, before being asked to infer that Mr. Patello lied at trial in order to curry favor with the government.  This tortured and purely speculative defense theory is unsupported by the law and respectfully must be denied.

## **CONCLUSION**

In conclusion, and for the reasons discussed above, Mr. Watts' motion *in limine* to call Mr. Stein during his defense case for the purpose of establishing Mr. Patello's bias is respectfully denied.

**SO ORDERED.**

Dated:  May 14, 2013
        Brooklyn, New York

                                    _____/s/_____
                                    KIYO A. MATSUMOTO
                                    United States District Judge
                                    Eastern District of New York